## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | |
|---|---|
| BEDNER GROWERS, INC., <br><br>            Plaintiff, <br><br> v. <br><br> FRESH START PRODUCE SALES, INC., THEO RUMBLE, JR., GREGORY T. BLACKWOOD, and CAMERON S. WHITE, each individually, <br><br>            Defendants. | CIVIL ACTION <br><br> Case No. |

### VERIFIED COMPLAINT

For its complaint, the plaintiff respectfully states as follows:

### THE PARTIES

1.       Bedner Growers, Inc. ("*Plaintiff*") is a Florida corporation with its principal place of business located at Delray Beach, Florida.

2.       Plaintiff cultivates and raises perishable agricultural commodities or agricultural products (hereinafter "*Produce*") for marketing or sale in interstate commerce.

3.       At all times relevant hereto, Plaintiff was engaged in the business of cultivating and raising fresh Produce for marketing or sale and, therefore, is a "grower" of Produce as defined by PACA.

4.       At all times relevant hereto, Plaintiff was engaged in the business of cultivating and raising fresh Produce on its farms located within the State of Florida and, therefore, a "producer" under Florida law.

5.       At all times relevant hereto, Plaintiff was engaged in the business of raising and producing, *inter alia*, peppers and cucumbers for marketing or sale.

6.     Company received Plaintiff's Produce from its farming locations in Florida.

7.     Peppers and cucumbers are natural products grown on farms and, therefore, qualify as "agricultural products" under Florida law.

8.     Plaintiff does not purchase Produce from third parties for the purpose of marketing or selling said Produce, directly or indirectly, in commerce.

9.     The United States Department of Agriculture ("*USDA*") expressly recognizes cucumbers and peppers as commodities covered under the provisions of the Perishable Agricultural Commodities Act, 1930, *as amended*, 7 U.S.C. §§ 499a-499t ("*PACA*").

10.    Plaintiff trades in fresh fruit and vegetable commodities the USDA expressly recognizes as commodities covered under the provisions of the PACA.

11.    Plaintiff is exempt from PACA's licensing requirements because Plaintiff only markets and sells Produce that it grew itself.

12.    Defendants are:

    (a)     Fresh Start Produce Sales, Inc. (the "*Company*"), is a Florida corporation with its principal place of business located at 5353 W. Atlantic Ave., Suite 403-404, Delray Beach, Florida 33484. At all times relevant to this action:

        (i)     Company was and is owned and operated by Theo Rumble Jr., Gregory Blackwood, and Cameron White;

        (ii)    Company was and is the holder of PACA license number 19962107[1], which the USDA issued to Company on or about July 25, 1996;

        (iii)   Company is a "dealer" of Produce as defined by PACA;

---

[1] A true and correct copy of Company's PACA license is attached hereto as Exhibit A.

(iv)    Company was and is the holder of an Agricultural Dealer License number AD21, which the Florida Department of Agriculture and Consumer Services issues to Company on or about July 24, 2017.

(v)    Company is a "dealer" of Produce as defined by Florida law.

(vi)    Company sold Plaintiff's Produce, in the ordinary course of its Produce related business, to third parties located within, *inter alia*, the states of Florida, Pennsylvania, Maryland, Ohio, Missouri, Mississippi, New York, Alabama, Wisconsin, Illinois, and North Carolina;

(vii)    Company sold Plaintiff's Produce in interstate commerce.

(viii)    Company acted by and through Theo Rumble Jr., Gregory Blackwood, and Cameron White – and other unknown officers, managers, shareholders, or agents – and otherwise participated in the tortious conduct or other wrongs set forth herein.

(b)    Theo Rumble Jr. ("*Rumble*"), upon information and belief[2], is a resident of Delray Beach, Florida and domiciled in the State of Florida, and at all times relevant hereto:

(i)    was and is an owner of Company;

(ii)    was and is an officer or shareholder of Company

---

[2] On or upon "information and belief," as used herein, means Plaintiff is informed and believes a fact or condition to be true and, upon such information and belief, alleges the fact or condition in connection with the instant complaint. Plaintiff's information and beliefs are based upon investigation and derived from such sources as: Plaintiff's conversations with Defendants, e-mail or text message correspondence with Defendants, publicly available government documents, relevant statements or information contained on Defendant owned or controlled websites or social media platforms, Plaintiff and Defendants' relevant produce transaction documents, documents Defendants provided Plaintiff, and relevant third-party documents.

(iii)   was and is identified as a "*Reported Principal*"[3] on the Company's PACA License;

(iv)   was and is identified as an officer or director of the Company in the 2025 Florida Profit Corporation Annual Report, which the Company filed with the Secretary of State for the State of Florida on January 22, 2025; and,

(v)   was and is in a position to exercise dominion and control over Company and otherwise participated in the tortious conduct or other wrongs set forth herein.

(c)   Gregory T. Blackwood ("*Blackwood*"), upon information and belief, is a resident of Lake Worth, Florida and domiciled in the State of Florida, and at all times relevant hereto:

(i)   was and is an owner of Company;

(ii)   was and is an officer or shareholder of Company

(iii)   was and is identified as a "*Reported Principal*" on the Company's PACA License;

(iv)   was and is identified as an officer or director of the Company in the 2025 Florida Profit Corporation Annual Report, which the Company filed with the Secretary of State for the State of Florida on January 22, 2025; and,

---

[3] The USDA **requires** each new PACA license applicant or PACA licensee applying for renewal to provide "INFORMATION FOR INDIVIDUAL OWNER; ALL PARTNERS; ALL MEMBERS AND/OR MANAGERS, OF LLCS – ALL OFFICERS (INCLUDING TITLES), DIRECTORS, AND/OR STOCKHOLDERS, HOLDING MORE THAN 10 PERCENT OF OUTSTANDING VOTING STOCK…" Those qualifying individuals or legal entities are reported on the PACA License itself as a "Reported Principal." *See* https://www.ams.usda.gov/sites/default/files/media/FTPP_211_PACALicenseApplication.pdf (last visited on 8/4/25)

(v)     was and is in a position to exercise dominion and control over Company and otherwise participated in the tortious conduct or other wrongs set forth herein.

(d)     Cameron S. White ("*White*"), upon information and belief, is a resident of Boca Raton, Florida and domiciled in the State of Florida, and at all times relevant hereto:

(i)     was and is an owner of Company;

(ii)    was and is an officer or shareholder of Company

(iii)   was and is identified as a "*Reported Principal*" on the Company's PACA License;

(iv)    was and is identified as an officer or director of the Company in the 2025 Florida Profit Corporation Annual Report, which the Company filed with the Secretary of State for the State of Florida on January 22, 2025; and,

(v)     was and is in a position to exercise dominion and control over Company and otherwise participated in the tortious conduct or other wrongs set forth herein.

13.     Rumble, Blackwood, and White hereinafter each referred to as a "*Principal*" and collectively referred to as the "*Principals*."

14.     Company and Principals shall hereinafter be collectively referred to as the "*Defendants*."

15.     At all times relevant hereto, Company was engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by PACA.

16.     At all times relevant hereto, Company was engaged in the business of receiving Produce for sale on commission for or on behalf of another and, therefore, is a "commission merchant" of Produce as defined by PACA.

17.     The USDA provides a list of perishable agricultural commodities covered under PACA,[4] which includes fresh pepper and cucumber.

18.     Plaintiff consigned or supplied Defendants, and Defendants received from Plaintiff, perishable agricultural commodities comprised of fresh pepper and cucumber. As such, Defendants' Produce transactions with Plaintiff involved Produce the USDA expressly recognizes as covered commodities under PACA.

19.     At all times relevant hereto, Company acted or failed to act by and through its Principals.

20.     As a PACA licensee and dealer of Produce, the acts, omissions, or failures of its Principals, employees, or agents constitute acts, omissions, or failures of Company.

## JURISDICTION AND VENUE

21.     The District Court has subject matter jurisdiction over this civil action arising under 7 U.S.C. § 499e(b)(2) and pursuant to 28 U.S.C. § 1331.

22.     The District Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1337 because PACA qualifies as an "Act of Congress regulating commerce" and

---

[4] The USDA's Agricultural Marketing Service maintains and updates, in the ordinary course of its business, a complete list of the USDA's PACA covered commodities online at:
https://www.ams.usda.gov/sites/default/files/media/CommoditiesCoveredbyPACA.pdf (last visited on 10/25/25).

several of Plaintiff's claims herein arise under 7 U.S.C. § 499e(b)(2), 7 U.S.C. § 499p, and 7 C.F.R. § 46 *et seq.*

23.     The Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367(a).

24.     Venue in this district is based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and a substantial part of the property that is the subject of this action is or was situated within this district.

25.     Venue is further appropriate in this district because the Company maintains its primary place of business in Delray Beach, Florida, which is located in Palm Beach County.

## NATURE OF THE CASE

26.     This is a civil action for monetary and injunctive relief, pursuant to which Plaintiff seeks to enforce its rights against the Defendants under both PACA Unfair Conduct provisions and further seeks to enforce its rights under Florida law (e.g., breach of contract, breach of fiduciary duty, and negligence).

27.     As set forth in detail herein, Defendants received Plaintiff's Produce on consignment and, thereafter, failed to: (i) truly and correctly account to Plaintiff under PACA, (ii) account promptly to Plaintiff under PACA, and (iii) to make full payment promptly to Plaintiff under PACA. Furthermore, Defendants breached their individual and collective fiduciary obligations to Plaintiff under PACA and Florida law and breached the parties' Marketing Agreement by, *inter alia*, knowingly and wrongly withholding funds due to Plaintiff for the improper purpose of circumventing the parties' agreed upon reimbursement procedures regarding food safety claims.

28.     Defendants have violated Florida law and committed willful, repeated, and flagrant violations of Section 2 of PACA (i.e., Unfair Conduct provisions) and, as a direct result of said violations, Plaintiff has incurred damages of not less than $3,707,548.55.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

29.     Plaintiff entered into a written Marketing Agreement with Company on September 5, 2026 (the "*Agreement*")[5] wherein Company agreed to receive on consignment, market, and sell the entirety of Plaintiff's pepper and cucumber crops in exchange for an eight percent (8%) sales commission and a grant of marketing exclusivity.

30.     The Agreement provided Company with "the exclusive right to market and sell the Produce in markets worldwide...."

31.     In furtherance of Company's contract right to serve as Plaintiff's exclusive marketer for the Produce identified in the Agreement, Plaintiff waived "any right it may have to sell or otherwise dispose of, or collect any proceeds, from the Produce, without [Company's] written consent."

32.     Because the Agreement involves the marketing and sale of Produce, time is and was of the essence with respect to Company's performance thereunder.

33.     The Agreement established a consignment relationship between Plaintiff, as the grower of the Produce identified in the Agreement (i.e., consignor) and Company as the commission merchant or marketing agent (i.e., consignee).

34.     As Plaintiff's exclusive sales and marketing agent, Company was authorized under the Agreement to, *inter alia*, (i) "determine the sales price" of Plaintiff's Produce, and (ii) sell

---

[5] A true and correct copy of the Agreement is attached hereto as <u>Exhibit B</u>.

Plaintiff's Produce on "delivered, fixed price, consignment, open, price-after-sale, joint account, delayed billing or other sales terms."

35.     With respect to Plaintiff's Produce, the Agreement further granted Company the authority to make price or quantity adjustments after the sale.

36.     Company was not responsible to Plaintiff for the return of any set or agreed upon fixed price for the Produce Plaintiff placed with Company pursuant to the terms of the Agreement.

37.     Legal title to the Produce identified in the Agreement did not vest in Company until it was accepted by Company's arranged buyer.

38.     Under the Agreement, Plaintiff "has title to and bears all risk of loss with respect to the Produce, including loss or damage by fire or other casualty, until title passes to [Company's] customer...."

39.     To facilitate the transfer of good title to the Produce from Plaintiff to Company's customer, Plaintiff represented to Company that Plaintiff "(1) has good title to the Produce free of all third-party claims, (2) Plaintiff's Produce is not subject to any other agreement under which they must be marketed, and (3) Plaintiff will comply with all applicable laws pertaining to labor, employment issues, taxes, environmental issues, intellectual property issues, Food Safety Laws, and all other applicable laws and statutes.

40.     Company was required to account to Plaintiff for the FOB price at which it sold the Produce and remit the sales proceeds, less its agreed commissions, deductions, and expenses.

41.     Company was not required to grade, pack, or label the Produce Plaintiff supplied to Company under the Agreement.

42.     Plaintiff delivered or tendered its Produce to Company by delivering or causing the Produce to be delivered to a cold storage and receiving facility operated by Mecca Farms – a third-

party warehousing entity registered to do business in Florida – and located at 7965 Lantana Rd., Greenacres, Florida 33467.

43.      At all times relevant hereto, Company utilized Mecca Farms' facility on Lantana Rd. in Greenacres, Florida, as its designated cold storage and receiving location for Plaintiff's Produce.

44.      Under the Agreement, Plaintiff paid a $0.50 per carton price for cooling, storage, and shipping services, which were identified in the Agreement as "Fresh Loading Charges."

45.      Under the Agreement, Company did not bear the risk of loss by accident with respect to Plaintiff's Produce.

46.      Plaintiff paid for and was otherwise financially responsible for the transportation of its Produce to Company's receiving facility and for any freight charges related to Company's sale of Plaintiff's Produce on a delivered basis.

47.      Under the Agreement, Company was authorized to deduct "any amounts [Company] pays for transportation services on delivered sales…" from the gross sales proceeds company received for its sale of Plaintiff's Produce.

48.      Under the Agreement, Plaintiff agreed to defend Company and others from any claims, lawsuits, demands, or proceedings… arising out of contract, tort, or misrepresentation, a Food Safety Event or other violation of the law (collectively the "Claims")."

49.      Under the Agreement, Plaintiff agreed to indemnify Company others "against any [] damages, losses, liabilities, fines, penalties, and expenses, including reasonable attorneys' fees and costs ("Damages")" resulting from any Claims.

50.      Plaintiff bore all quality risks associated with all Produce delivered or tendered to Company under the Agreement.

51.     With respect to a Food Safety Event (as defined in the Agreement), Plaintiff was required to "reimburse [Company] for removal, transportation, disposal and replacement of the subject Produce, fees from Fresh Start's customers arising out of the Food Safety Event, notice and communications, lost profits, damages to goodwill of [Company] and its customers, and all other expenses arising from the Food Safety Event."

52.     Under the Agreement, Plaintiff granted Company the right to make price adjustments with buyers due to quality or condition of the Produce, market decline, and other causes.

53.     Company did not bear the risk of its own poor performance under the Agreement.

54.     Under the Agreement, the net return payable to Plaintiff utilized the sales price Company set with respect to its sale of Plaintiff's Produce.

55.     Under the Agreement, Company did not promise, represent, or warrant that it would provide Plaintiff with any specific or agreed upon price or even the best or highest price available in Company's market at the time and at the location of Company's sale of Plaintiff's Produce.

56.     Under the Agreement, Company was authorized to make price adjustments with buyers even post sale.

57.     Under the Agreement, Company was authorized to collect payments from its sale of Plaintiff's Produce directly from the buyers of said Produce.

58.     The Agreement set forth Company's authority to deduct commissions, fees, and expenses from the gross sales proceeds it collected from its sale of Plaintiff's Produce.

59.     As consignee of Plaintiff's Produce, Company was subject to Plaintiff's control as set forth in the Agreement.

60.     Plaintiff and Company utilized the Agreement to set forth Company's authority to act with respect to Plaintiff's Produce.

61.     Because Plaintiff is a grower of Produce under PACA and because Company is both a PACA and Florida licensed commission merchant or dealer of Produce and a consignment agent with exclusivity rights under the Agreement, a special relationship existed between Plaintiff and Company that established a fiduciary relationship under PACA and Florida law.

62.     Because the Agreement provided Company with exclusive marketing rights and provided for Company to market and sell or distribute Plaintiff's entire Produce crop or multiple lots therefrom, Company also served as Plaintiff's grower's agent under PACA.

63.     As a direct or proximate result of the Company's violations of its duties to Plaintiff under PACA, the Plaintiff has suffered damages which are covered under PACA, in an amount not less than $3,707,548.55, plus all applicable interest under Florida law, and all costs of collection, including attorneys' fees, incurred in this action.

64.     Defendants knew or should have known that Plaintiff utilized both its own land and leased land to grow the Produce supplied to Company during the term of the Agreement, which is illustrated in the Agreement wherein it states that "'Farms' mean all farmland **leased or controlled** by, or on behalf of, Bender in the State of Florida where fruits and vegetables are brown by, or on behalf of Bedner." *See* Agreement, Sec. 2.1 (emphasis added).

65.     Because both Plaintiff and Defendants operate in the same geographic area (i.e., Delray Beach, Florida) and deal in perishable agricultural commodities, Defendants knew or should have known that if Plaintiff was unable to pay for its leased farming land, that such farm land would be permanently lost to Plaintiff given the scarcity of farmland in and around Delray Beach, Florida.

66.     Defendants knew or should have known or foreseen that its failure or refusal to promptly pay Plaintiff would prevent Plaintiff from paying its bills, including land leases, and otherwise adversely affect Plaintiff's finances.

## COUNT I

## PACA VIOLATION: BREACH OF SECTION 2 OF PACA (UNFAIR CONDUCT)

## COMPANY

67.     Plaintiff re-alleges paragraphs 1 through 20 and 29 through 66 as though fully set forth herein.

68.     As a PACA licensee and commission merchant or dealer of Produce, Company possessed a statutory and fiduciary duty to:

(a)     ensure that Company performed all duties, express or implied, arising out of Company's Produce related transactions and dealings with Plaintiff;

(b)     deal with Plaintiff in good faith, which requires honesty in fact and observance of reasonable commercial standards of fair dealing in the trade;

(c)     provide true and correct accountings to Plaintiff for all Produce it received from Plaintiff on consignment;

(d)     account promptly to Plaintiff for all Produce it received from Plaintiff on consignment;

(e)     make full payment promptly to Plaintiff for all Produce it received from Plaintiff on consignment;

(f)     remit to Plaintiff funds collected from its sale of Plaintiff's Produce;

(g)     exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner; and,

(h)     refrain from engaging in unfair conduct in violation of Section 2 of PACA.

69.     Company accepted those fiduciary duties owed to Plaintiff under PACA by operating as a licensed "dealer" or "commission merchant" of Produce under PACA, voluntarily entering into the Agreement, and accepting Produce from Plaintiff on consignment.

70.     Company's duties owed to Plaintiff, express or implied, under PACA are in addition to any duties owed to Plaintiff that arise simply due to the existence of the parties' contractual relationship.

***Company Violated its Duty Under PACA to Provide True and Correct Accountings***

71.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain the information and detail required under PACA.

72.     The Agreement did not modify or alter Company's duty to provide true and correct accountings to Plaintiff under PACA.

73.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain the information and detail required for Plaintiff to determine whether Company acted negligently, in bad faith, or in compliance with the terms of the Agreement.

74.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain actual sales price information.

75.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain the dates of Company's sale of Plaintiff's Produce.

76.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain the geographic location or closest major metropolitan area of Company's sale of Plaintiff's Produce.

77.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to identify the original sales price, as opposed to adjusted sales prices.

78.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to provide an explanation with respect to any sales price adjustments.

79.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain any type of documentation with respect to, *inter alia*, Produce Company received from Plaintiff but did not sell or Produce sold for $0.00.

80.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain the information and detail required for Plaintiff to determine if Company pooled Plaintiff's Produce with its own products or products sourced from other suppliers without Plaintiff's knowledge or consent.

81.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to contain the information and detail required for Plaintiff to determine if Company unjustifiably failed to obtain market prices for Plaintiff's Produce at the time and location of Company's sale of Plaintiff's Produce.

82.     Company violated its duty to provide true and correct accountings to Plaintiff because Company's accountings to Plaintiff failed to include actual sales prices, dates of sale, geographic location of sale, and other similar details.

83.     Company knowingly and intentionally violated its duty to provide true and correct accountings to Plaintiff.

84.     No just cause exists for Company's violations of its duty to provide true and correct accountings to Plaintiff.

***Company Violated its Duty Under PACA to Account Promptly to Plaintiff***

85.     Company violated its duty to account promptly to Plaintiff because Company failed or refused to provide Plaintiff with accountings in a timely manner.

86.     The Agreement did not modify or alter Company's duty to account promptly to Plaintiff under PACA.

87.     Company violated its duty to account promptly to Plaintiff because Company failed or refused to provide Plaintiff with accountings within the timeframe set forth in 7 C.F.R. 46.2(z)(2).

88.     Company violated its duty to account promptly to Plaintiff because Company failed or refused to provide Plaintiff with accountings upon the frequency required under PACA.

89.     Company violated its duty to account promptly to Plaintiff because Company failed or refused to provide Plaintiff with its accountings for cucumbers received from Plaintiff on consignment between March 17, 2025, and May 10, 2025, upon the following schedule: April 16, 2025, April 26, 2025, May 6, 2025, May 16, 2025, and June 9, 2025.

90.     Company violated its duty to account promptly to Plaintiff because Company failed or refused to provide Plaintiff with its accountings for peppers received from Plaintiff on

consignment between December 9, 2024 and May 10, 2025, upon the following schedule: January 8, 2025, January 18, 2025, January 28, 2025, February 7, 2025, February 17, 2025, February 27, 2025, March 9, 2025, March 19, 2025, March 29, 2025, April 8, 2025, April 18, 2025, April 28, 2025, May 8, 2025, May 18, 2025, and June 9, 2025.

91.     Company violated its duty to account promptly to Plaintiff because Company provided Plaintiff with its alleged accountings regarding cucumbers an average of 67 days after the date the accountings were due to Plaintiff under PACA.

92.     Company violated its duty to account promptly to Plaintiff because in March of 2025, Company failed or refused to provide Plaintiff with its alleged cucumber accountings for 67 to 83 days beyond the date the accountings were due to Plaintiff under PACA.

93.     During the 2024 – 2025 Florida cucumber season, Plaintiff placed forty-six (46) lots of cucumbers with Company on consignment between March 17, 2025 and May 10, 2025.

94.     Company violated its duty to account promptly to Plaintiff because Company failed or refused to provide Plaintiff with accountings for seven (7) lots of cucumber, which was comprised of approximately 65,397 packages or cartons of cucumbers.

95.     No just cause exists for Company's failure or refusal to provide Plaintiff with accountings for seven (7) lots of cucumber.

96.     Company violated its duty to account promptly to Plaintiff because Company provided Plaintiff with its alleged accountings regarding peppers an average of 100 days after the date the accountings were due to Plaintiff under PACA.

97.     Company violated its duty to account promptly to Plaintiff because, with respect to the peppers it received from Plaintiff in December of 2024, Company provided its alleged

accountings to Plaintiff 72 to 165 days beyond the date the accountings were due to Plaintiff under PACA.

98.      Company knowingly and intentionally violated its duty to account promptly to Plaintiff.

99.      No just cause exists for Company's violations of its duty to account promptly to Plaintiff.

***Company Violated its Duty Under PACA to Promptly Pay Plaintiff***

100.      Company violated its duty to promptly pay Plaintiff because Company failed or refused to provide Plaintiff with payments within the timeframe set forth in 7 C.F.R. 46.2(aa).

101.      The Agreement did not modify or alter Company's duty to promptly pay Plaintiff under PACA.

102.      The Agreement did authorize Company to "make a final payment for the Season no later than July 31 of that Season."

103.      Company violated its duty to promptly pay Plaintiff because Company failed or refused to provide Plaintiff with payments upon the frequency required under PACA.

104.      Company violated its duty to promptly pay Plaintiff because Company failed or refused to pay Plaintiff for the cucumbers Company received from Plaintiff on consignment between March 17, 2025 and May 10, 2025, upon the following schedule: April 16, 2025, April 26, 2025, May 6, 2025, May 16, 2025, and July 31, 2025.

105.      Company violated its duty to promptly pay Plaintiff because Company failed or refused to pay Plaintiff for the peppers Company received from Plaintiff on consignment between December 9, 2024 and May 10, 2025, upon the following schedule: January 8, 2025, January 18, 2025, January 28, 2025, February 7, 2025, February 17, 2025, February 27, 2025, March 9, 2025,

March 19, 2025, March 29, 2025, April 8, 2025, April 18, 2025, April 28, 2025, May 8, 2025, and July 31, 2025.

106.     Company violated its duty to promptly pay Plaintiff because Company failed or refused to pay Plaintiff not less than the $3,707,548.55 identified in Company's accountings to Plaintiff as funds collected on behalf of and due to Plaintiff.

107.     Company violated its duty to promptly pay Plaintiff because Company continues to wrongly and illegally hold not less than $3,707,548.55 of Produce sales proceeds collected, due, and owing to Plaintiff.

108.     Company knowingly and intentionally violated its duty to promptly pay Plaintiff.

109.     No just cause exists for Company's continued failure or refusal to immediately pay Plaintiff all amounts due to Plaintiff for Company's sale of Plaintiff's Produce.

***Company Violated its Duty Under PACA to Remit Funds Due to Plaintiff from Company's Sale of Plaintiff's Produce***

110.     Company violated its duty to remit funds collected from its sale of Plaintiff's Produce because Company collected funds from its sale of Plaintiff's Produce for which it has failed or refused to remit to Plaintiff.

111.     Plaintiff, by and through its Agreement with Company, authorized Company to invoice the buyers of Plaintiff's Produce in its name and to collect payments directly from said buyers.

112.     Company invoiced the buyers of Plaintiff's Produce.

113.     Company received and collected payment from the buyers of Plaintiff's Produce.

114.     Company failed to remit funds collected from the buyers of Plaintiff's Produce and due to Plaintiff.

115.    Company violated its duty to remit funds due to Plaintiff because Company failed or refused to pay Plaintiff not less than the $3,707,548.55 of collected funds identified in Company's accountings to Plaintiff.

116.    Company knowingly and intentionally violated its duty to remit to Plaintiff funds collected from its sale of Plaintiff's Produce.

117.    No just cause exists for Company's continued failure or refusal to immediately pay Plaintiff all amounts collected from its sale of Plaintiff's Produce.

*Company Violated its Duty Under PACA to Exercise Reasonable Care and Diligence in Disposing of Plaintiff's Produce*

118.    Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to sell all the Produce Plaintiff placed with Company.

119.    Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to obtain timely USDA or unbiased third-party inspections documenting the quality or condition of Plaintiff's Produce upon Plaintiff's tender or delivery of said Produce to Company.

120.    Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to support its decision to sell Plaintiff's Produce below market prices with documentation reflecting the quality or condition of Plaintiff's Produce at the time and place of Company's sale to a buyer.

121.    Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to support its decision to dump or donate Plaintiff's Produce with documentation reflecting the quality or condition of Plaintiff's Produce at the time of the alleged dump.

122.     Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to support its decision to dump or donate Plaintiff's Produce with documentation demonstrating that the dumped Produce lacked commercial value.

123.     Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to support its decision to dump or donate more than 5% of any single lot of Plaintiff's Produce with a dump certificate.

124.     Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to provide Plaintiff with documentation demonstrating that Company actually dumped or donated portions of Plaintiff's Produce and, therefore, did not sell said Produce to a buyer.

125.     Company violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce in a prompt, fair, and reasonable manner because Company failed to support its decision to sell Plaintiff's Produce for $0.00 with documentation justifying such sales.

126.     Company knowingly and intentionally violated its duty to exercise reasonable care and diligence in disposing of Plaintiff's Produce.

127.     No just cause exists for Company's continued failure or refusal to exercise reasonable care and diligence in disposing of Plaintiff's Produce.

**_Company Violated its Duty Under PACA to Deal with Plaintiff in Good Faith_**

128.     Because Company failed or refused to provide Plaintiff with true and correct accountings, Company breached its duty to deal with Plaintiff in good faith.

129.     Because Company failed or refused to account to Plaintiff for all the Produce Plaintiff tendered or delivered to Company under the Agreement, Company breached its duty to deal with Plaintiff in good faith.

130.     Because Company failed or refused to provide Plaintiff with accountings that contained sufficient detail or information, along with supporting documentation, necessary for Plaintiff to determine Company's compliance with PACA, Florida law, and the parties' Agreement, Company breached its duty to deal with Plaintiff in good faith.

131.     Because Company failed or refused to provide Plaintiff with accountings that contained sufficient detail or information necessary for Plaintiff to know exactly how much was collected from Company's sale of Plaintiff's Produce and how much is due to be paid to Plaintiff, Company breached its duty to deal with Plaintiff in good faith.

132.     Because Company failed or refused to provide Plaintiff with proper documentation to support its accountings and sales decisions, all of which being required by PACA, Company breached its duty to deal with Plaintiff in good faith.

133.     Because Company failed or refused to remit funds to Plaintiff that Company collected from its sale of Plaintiff's Produce, Company breached its duty to deal with Plaintiff in good faith.

134.     Because Company failed or refused to pay Plaintiff not less than the $3,707,548.55 of collected funds identified in Company's accountings to Plaintiff, Company breached its duty to deal with Plaintiff in good faith.

135.     Company knowingly and intentionally violated its duty to deal with Plaintiff in good faith.

136.    No just cause exists for Company's continued failure or refusal to deal with Plaintiff in good faith.

137.    As a direct or proximate result of the Company's violations of its duties to Plaintiff under PACA, the Plaintiff has suffered damages which are covered under PACA, in an amount not less than $3,707,548.55, plus all applicable interest under Florida law, and all costs of collection, including attorneys' fees, incurred in this action.

138.    As a direct or proximate result of the Company's violations of its duties to Plaintiff under PACA, the Plaintiff was unable to renew 6 separate farm leases on approximately 380 acres of farmland, all of which was used to supply Company with Produce under the Agreement. Based on sales information between Plaintiff and Company during the term of the Agreement, Plaintiff estimates lost sales review of approximately $10,300,000.00 per year from Plaintiff's inability to grow Produce on the 380 acres of farmland for which it could not renew its land leases. Plaintiff's loss of about $10,300,000.00 of annual sales revenue resulted in a corresponding loss of approximately $2,500,000.00 of profit per year.

## COUNT II

## **BREACH OF CONTRACT**

## COMPANY

139.    Plaintiff re-alleges paragraphs 1 through 20 and 29 through 66 as though fully set forth herein.

### *Identification and Termination of the Contract*

140.    On September 5, 2016, Plaintiff and Company entered a Marketing Agreement (the "*Agreement*"). *See* Exhibit B.

141.    The initial term of the Agreement covered the 2016-2017 season, which runs from approximately August 1 through July 31 of the following year.

142.    The Agreement automatically renewed for successive single season terms "unless either party provides the other with written notice of its intention not to renew...."

143.    The Agreement did in fact automatically renew each season from the 2016-2017 season until the 2024-2025 season.[6]

144.    On June 11, 2025, Plaintiff provided Company with written notice of its intent to cancel or otherwise not renew the Agreement (the "*Termination Notice*").[7]

145.    Plaintiff's Termination Notice removed and otherwise terminated any and all authority Company had under the Agreement to act for or on behalf of Plaintiff beyond June 11, 2025.

***Contractual Dispute Resolution Process Compliance***

146.    Plaintiff and Company were each obligated, under Section 11.2 of the Agreement, to "send the other party a written notice of a claim, specifying the amount claimed, the reason for the dispute, the section of the agreement breached or other support for the claim."

147.    On June 20, 2025, Counsel for Company responded to the Termination Notice and: (i) discussed alleged damages Company incurred "because of the salmonella infections that have been linked to cucumbers grown by [Plaintiff] and the resulting product recall," (ii) acknowledging that the "Marketing Agreement contemplates [Company] making a final payment by July 31, 2025," (iii) stating that [Company] "is entitled to subtract any 'expenses incurred by [Company] arising out of the Marketing Agreement'" and identifying expenses related to a Food Safety Event as permitted under the Agreement, (iv) stating that Company "is working diligently to ascertain

---

[6] "2024-2025 season" means August 1, 2024 through July 31, 2025.
[7] A true and correct copy of Plaintiff's Original Termination Notice is attached hereto as <u>Exhibit C</u>.

all expenses incurred" from the Food Safety Event so that "any final payment that may be due or, if necessary, make a further demand on [Plaintiff], and (v) stating that "it is unlikely that [Company] will be able to complete the final payment calculation by July 31." (the "*Response Letter*").[8]

148.    On June 25, 2025, Counsel for Plaintiff replied to the Company's Response Letter and notified Company: (i) that its announced failure to pay Plaintiff constitutes a violation of PACA and demanded payment, (ii) of its failure to provide Plaintiffs "with routine and critical sales information about the shipments and sales activities concerning the 2025 sales of peppers and cucumbers" to its downstream customers, (iii) that it is "not authorized to withhold, unilaterally, for example, payments for unrecalled pepper shipments which have been received by and paid for by its customers," which is a "breach of contract" and a "clear violation of PACA," (iv) that it is not authorized to withhold funds from its sale of cucumbers not involved in any recall, (v) that it must provide detailed accountings to Plaintiff and disclose the existence of any collateral fees and expenses, and (vi) that "this withholding of payments for invoices, including very significant volume of wholly non-recall-related produce, has placed an inordinate amount of financial and other stress on this farm family" (the "*Reply Letter*").[9]

149.    On July 22, 2025, Plaintiff notified Company that it was in breach of PACA, had violated its fiduciary and non-fiduciary duties under PACA and Florida law, objected to the sufficiency of Company's accountings, and demanded payment of not less than $3,707,548.55 (the "*Demand Letter*").[10]

---

[8] A true and correct copy of Company's Response Letter to Plaintiff is attached hereto as <u>Exhibit D</u>.
[9] A true and correct copy of Plaintiff's Reply Letter is attached hereto as <u>Exhibit E</u>.
[10] A true and correct copy of Plaintiff's Demand Letter to Company is attached hereto as <u>Exhibit F</u>.

150.    The Demand Letter stated that "not less than 1,615,654 packages or cartons of peppers" were delivered or tendered to Company between December 9, 2024 and May 10, 2025, none of which were involved in a recall.

151.    The Demand Letter stated that "not less than 403,699 packages or cartons of cucumbers" were delivered or tendered to Company between March 17, 2025 and May 10, 2025, of which only 125,969 packages or cartons were involved in Plaintiff's May 19, 2025 cucumber recall.

152.    On August 6, 2025, Plaintiff issued an additional notice of termination of the Agreement to Company stating that "effective immediately, all business dealings under the Agreement shall ceases, except as to those provisions of the Agreement the parties agreed shall survive termination, if any" (the "*Second Termination Notice*").[11]

153.    The Second Termination Notice also notified Company of a dispute involving Company's alleged failure "to provide [Plaintiff] 'a final payment for the 2024/2025 season' by 'July 31.'" And that "this failure or refusal to pay [Plaintiff] constitutes a material breach of the Marketing Agreement."

154.    On August 13, 2025, Company further responded to Plaintiff's Demand Letter, its Second Termination Notice, and phone conversations between counsel for the parties held on July 31, 2025 (the "*Second Response Letter*").[12]

155.    The parties' efforts to meet face to face were unsuccessful and determined to be counterproductive or impossible.

---

[11] A true and correct copy of Plaintiff's Second Termination Notice is attached hereto as Exhibit G.

[12] A true and correct copy of Company's Second Response Letter is attached hereto as Exhibit H.

156.     Plaintiff satisfied its obligations under Section 11.2 of the Agreement to "send the other party [Company herein] a written notice of a claim, specifying the amount claimed, the reason for the dispute, the section of the agreement breached or other support for the claim."

157.     Plaintiff has satisfied all conditions of its contract with Company.

***Plaintiff Supplied Produce to Company***

158.     Company received and accepted all the Produce Plaintiff delivered or otherwise tendered to Company during the 2024-2025 season within the State of Florida.

159.     Company failed to either object to or reject any load of Produce Plaintiff delivered or otherwise tendered to Company during the 2024-2025 season.

160.     Company failed to obtain a USDA or other third-party inspection to document the arrival condition of any of the Produce (i.e., independent inspection for quality and/or condition defects) Plaintiff delivered or otherwise tendered to Company during the 2024-2025 season.

161.     Upon information and belief, Company resold all the Produce Plaintiff delivered or otherwise tendered to Company during the 2024-2025 season.

***Failure to Account***

162.     Company violated its duty to account to Plaintiff under the Agreement because Company failed or refused to provide Plaintiff with accountings for seven (7) lots of cucumber, which was comprised of approximately 65,397 packages or cartons of cucumbers.

163.     No just cause exists for Company's failure or refusal to provide Plaintiff with accountings for seven (7) lots of cucumber.

*Failure to Pay and Wrongful Withholding*

164.    Company failed or refused to pay or otherwise deliver good funds to Plaintiff for the shipments of Produce Plaintiff delivered or otherwise tendered to Company during the 2024-2025 season.

165.    Company failed or refused to remit to Plaintiff the full or proper amount of funds it collected from its sale of Plaintiff's peppers during the 2024-2025 season.

166.    Company knowingly and intentionally failed or refused to make a final payment to Plaintiff on July 31, 2025, for its sale of Plaintiff's peppers during the 2024-2025 season.

167.    Company failed or refused to remit to Plaintiff the full or proper amount funds it collected from its sale of Plaintiff's cucumbers during the 2024-2025 season that were not subject to recall.

168.    Company knowingly and intentionally failed or refused to make a final payment to Plaintiff on July 31, 2025, for its sale of Plaintiff's cucumbers during the 2024-2025 season.

169.    Company is wrongly in possession of funds due, owing, and rightfully belonging to Plaintiff.

*Improper Deductions*

170.    Company failed or refused to limit its deductions from the funds it collected from Company's sale of Plaintiff's Produce during the 2024-2025 season to what was contractually or statutorily authorized to deduct.

171.    Company improperly deducted costs and expenses allegedly related to Plaintiff's recall of certain cucumbers supplied to Company between April 29, 2025, and May 14, 2025, from the funds Company collected from its sale of Plaintiff's Produce during the 2024-2025 season.

172.   Company improperly deducted costs and expenses allegedly related to Plaintiff's recall of certain cucumbers supplied to Company between April 29, 2025, and May 14, 2025, from funds Company collected from its sale of Plaintiff's peppers during the 2024-2025 season.

173.   Neither Company nor Plaintiff recalled any peppers traceable to Plaintiff during the 2024-2025 season.

174.   During the 2024-2025 season, Company received and accepted thirty (30) lots of cucumbers, comprised of 289,624 cartons or packages, from Plaintiff **prior** to Plaintiff's May 19, 2025, recall of cucumbers supplied to Company between April 29, 2025, and May 14, 2025.

175.   During the 2024-2025 season, Company received and accepted eleven (11) lots of cucumbers, comprised of 125,969 cartons or packages, from Plaintiff that were involved in or subject to Plaintiff's recall of cucumbers supplied to Company between April 29, 2025, and May 14, 2025.

176.   Company improperly deducted fees and expenses allegedly related to Plaintiff's recall of certain cucumbers supplied to Company between April 29, 2025, and May 14, 2025, from the funds Company collected from its sale of Plaintiff's cucumbers **prior** to Plaintiff's May 19, 2025, recall of cucumbers.

177.   Company circumvented the "Food Safety Event" reimbursement or indemnification process set forth in the Agreement by improperly deducting fees and expenses and otherwise withholding payment from Plaintiff.

178.   Company knowingly and intentionally set off expenses it allegedly incurred in connection with Plaintiff's May 19, 2025, cucumber recall for the improper purpose of utilizing Plaintiff's funds to unilaterally pay customer claims with funds belonging to Plaintiff and to avoid the agreed upon reimbursement process for "Food Safety Events" identified in the Agreement.

179. As a direct or proximate result of the Company's breaches of contract, the Plaintiff has suffered damages in an amount not less than $3,707,548.55, plus all applicable interest under Florida law, and all costs of collection, including attorneys' fees, incurred in this action.

180. As a direct or proximate result of the Company's violations of its duties to Plaintiff under PACA, the Plaintiff was unable to renew 6 separate farm leases on approximately 380 acres of farmland, all of which was used to supply Company with Produce under the Agreement. Based on sales information between Plaintiff and Company during the term of the Agreement, Plaintiff estimates lost sales review of approximately $10,300,000.00 per year from Plaintiff's inability to grow Produce on the 380 acres of farmland for which it could not renew its land leases. Plaintiff's loss of about $10,300,000.00 of annual sales revenue resulted in a corresponding loss of approximately $2,500,000.00 of profit per year.

## COUNT III

## BREACH OF FIDUCIARY DUTY

### COMPANY & PRINCIPALS

181. Plaintiff re-alleges paragraphs 1 through 20 and 29 through 138 as though fully set forth herein.

182. At all times relevant hereto, Company acted or failed to act by and through its officers, directors, shareholders, employees, and agents.

183. As owners, shareholders, officers, or directors of Company, Principals each participated in the administration and management of the Company during the 2024-2025 season.

184. As owners, shareholders, officers, or directors of Company, Principals each controlled and managed or were each in a position to control and manage Company's operations and had control over its financial dealings.

185.    As owners, shareholders, officers, or directors of Company, Principals each had the authority to direct or were in a position to direct the payment of Company's operating funds and otherwise had the power to direct the application or disposition of its assets.

186.    As owners, shareholders, officers, or directors of Company, Principals each participated, along with the Company, in the administration and management of the Produce Plaintiff consigned to Company during the 2024-2025 season and all related sales proceeds.

187.    As owners, shareholders, officers, or directors of Company, Principals each owed a fiduciary duty of loyalty to act in the best interest of Plaintiff and to refrain from self-dealing.

188.    As owners, shareholders, officers, or directors of Company, Principals each owed a fiduciary duty of prudence that requires Principals to exercise reasonable care, skill, and caution in the management, administration, and distribution of Plaintiff's Produce.

189.    As owners, shareholders, officers, or directors of Company, Principals were each in a position to influence Company's application of its operating funds and otherwise had the power to influence the application or disposition of its assets, including Plaintiff's Produce and all proceeds collected from Company's sale thereof.

190.    At all times relevant to this action, Principals were each authorized signatories on Company's bank account(s) and otherwise had the power to direct the application or disposition of its assets, including it's the proceeds Company collected from its sale of Plaintiff's Produce.

191.    As owners, shareholders, officers, or directors of Company, Principals were each in a position to exercise judgment, discretion, and control over Company's operations and its financial dealings, which included, *inter alia*, ensuring that Company neither acted nor failed to act in any manner that could result in Company's violation of its obligations to Plaintiff under PACA or Florida law.

192.    As owners, shareholders, officers, or directors of Company, Principals each knew or should have known of Company's failure to promptly pay Plaintiff for each shipment of Produce Company received from Plaintiff during the 2024-2025 season.

193.    As owners, shareholders, officers, or directors of Company, Principals each possessed the power necessary to counteract or prevent any decision of Company, not to pay Plaintiff.

194.    As owners, shareholders, officers, or directors of Company, Principals each possessed the power necessary to counteract or prevent any decision of Company, to withhold funds from Plaintiff.

195.    As owners, shareholders, officers, or directors of Company, Principals each possessed the power necessary to counteract or prevent any decision of Company, to take deductions from the funds Company collected from its sale of Plaintiff's Produce in excess of what was authorized under the parties' Agreement or by law.

196.    As a PACA licensee and consignment agent for Plaintiff, Company possessed a fiduciary duty to act in Plaintiff's best interests and with the highest standard of care, loyalty, and honesty.

197.    As a licensed dealer of agricultural products under Florida law, Company possessed a fiduciary duty to act in the best interest of Plaintiff and to handle the Produce Plaintiff consigned to Company, and all related proceeds, solely for Plaintiff's benefit and not for its own.

198.    Company's duties to Plaintiff, express or implied, under PACA are in addition to any duties owed to Plaintiff that arise simply due to the existence of the parties' contractual relationship.

199.    As a PACA licensee and dealer or commission merchant of Produce, Company possessed a statutory duty to ensure that Company performed all duties, express or implied, arising out of Company's Produce related transactions and dealings with Plaintiff.

200.    Defendants accepted those fiduciary duties owed to Plaintiff under PACA and Florida law by operating as a licensed "dealer" of Produce under PACA and Florida law, by executing the Marketing Agreement, and by accepting Produce from Plaintiff on consignment during the 2024-2025 season.

201.    Defendants, individually and collectively, served as trustees of all funds Company collected on behalf of Plaintiff.

202.    Because Company failed or refused to promptly pay Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duty to Plaintiff under PACA.

203.    Because Company failed or refused to promptly pay Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duty to Plaintiff under Florida law.

204.    Because Principals, and each of them, failed to counteract or prevent the decisions the Company's officers, managers, shareholders, or agents, not to promptly pay Plaintiff, Principals breached their respective fiduciary duties to Plaintiff under PACA and Florida law.

205.    Principals caused the Company to commit a breach of both PACA and Florida law by, *inter alia*, failing to provide Plaintiff with true, correct, and complete accountings in violation of their fiduciary duties under the PACA and Florida law.

206.    Principals caused the Company to commit a breach of the PACA by, *inter alia*, failing to account promptly to Plaintiff in violation of their fiduciary duties under the PACA.

207. Principals caused the Company to commit a breach of both PACA and Florida law by, *inter alia*, failing to make full payment promptly to Plaintiff in violation of their fiduciary duties under the PACA and Florida law.

208. Principals caused the Company to commit a breach of both PACA and Florida law by, *inter alia*, failing to remit to Plaintiff funds collected from Company's sale of Plaintiff's Produce during the 2024-2025 season in violation of its fiduciary duties under the PACA and Florida law.

209. Principals caused the Company to fail to segregate trust property and to avoid commingling trust property with personal or corporate assets in violation of Florida law by, *inter alia*, failing to hold the funds collected from Company's sale of Plaintiff's Produce during the 2024-2025 season in an account separate and apart from any other asset of the Defendants in violation of its fiduciary duties under Florida law.

210. Principals caused the Company to commit a breach of both PACA and Florida law by, *inter alia*, failing to obtain and maintain complete and accurate records regarding the Company's sale of Plaintiff's Produce during the 2024-2025 season, and the funds collected therefrom, in violation of its fiduciary duties under Florida law.

211. Because Defendants failed or refused to promptly or timely pay Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duties to Plaintiff under PACA and Florida law.

212. Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, not to pay Plaintiff, Defendants each breached their fiduciary duties to Plaintiff under PACA and Florida law.

213.     Because Defendants failed or refused to promptly or timely account to Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duties to Plaintiff under PACA and Florida law.

214.     Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, not to promptly or timely account to Plaintiff, Defendants each breached their fiduciary duties to Plaintiff under PACA and Florida law.

215.     Because Defendants failed or refused to truly, correctly, and properly account to Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duties to Plaintiff under PACA and Florida law.

216.     Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, not to truly, correctly, and properly account to Plaintiff, Defendants each breached their fiduciary duties to Plaintiff under PACA and Florida law.

217.     Because Defendants failed or refused to maintain complete and accurate records regarding the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duties to Plaintiff under PACA and Florida law.

218.     Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, not to maintain complete and accurate records regarding the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants each breached their fiduciary duties to Plaintiff under PACA and Florida law.

219.     Because Defendants failed or refused to deliver or remit collected funds to Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duties to Plaintiff under PACA and Florida law.

220.   Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, not to deliver or remit collected funds to Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants each breached their fiduciary duties to Plaintiff under PACA and Florida law.

221.   Because Defendants failed or refused to deliver or remit collected funds to Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duties to Plaintiff under Florida law to take reasonable steps to control and protect trust property.

222.   Because Defendants failed or refused to deliver or remit collected funds to Plaintiff for the Produce Plaintiff consigned to Company during the 2024-2025 season, Defendants breached their fiduciary duties to Plaintiff under Florida law to take reasonable steps to segregate trust assets and to avoid commingling.

223.   At all times relevant hereto and currently, Defendants have been and are in possession, custody, and control of funds Company received and collected from its sale of the Produce Plaintiff consigned to Company during the 2024-2025 season and that belong to Plaintiff by operation of law and the parties' Agreement, which expressly recognizes those charges or expenses for which Company is authorized to deduct and retain from said funds.

224.   Because Company – as a licensed dealer of Produce – operates subject to detailed record keeping requirements under both PACA and Florida law, the Produce Plaintiff placed with Company on consignment during the 2024-2025 season, and all related sales proceeds, remains identifiable or has been converted into another identifiable asset.

225.   Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, not to control and protect trust property or to keep trust

property separate and to avoid commingling, Defendants each breached their fiduciary duties to Plaintiff under PACA and Florida law.

226.    Because Defendants withheld funds due and owing to Plaintiff and improperly set off expenses alleged to be related to Plaintiff's May 19, 2025, recall of cucumbers supplied to Company between April 29, 2025, and May 14, 2025, Defendants breached their fiduciary duties to Plaintiff not to engage in self-dealing under PACA and Florida law.

227.    Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, to withhold funds due and owing to Plaintiff and to improperly set off expenses alleged to be related to Plaintiff's May 19, 2025, recall of cucumbers supplied to Company between April 29, 2025, and May 14, 2025, Defendants each breached their fiduciary duties to Plaintiff not to engage in self-dealing under PACA and Florida law.

228.    Because Defendants withheld funds due and owing to Plaintiff and improperly set off expenses alleged to be related to Plaintiff's May 19, 2025, recall of cucumbers supplied to Company between April 29, 2025, and May 14, 2025, Defendants breached their fiduciary duties to Plaintiff not to charge Plaintiff for undisclosed or hidden expenses or costs under PACA and Florida law.

229.    Because Defendants failed to counteract or prevent the decisions of Company, its officers, managers, shareholders, or agents, to withhold funds due and owing to Plaintiff and to improperly set off expenses alleged to be related to Plaintiff's May 19, 2025, recall of cucumbers supplied to Company between April 29, 2025, and May 14, 2025, Defendants each breached their fiduciary duties to Plaintiff not to charge Plaintiff for undisclosed or hidden expenses or costs under PACA and Florida law.

230. As a direct or proximate result of the Defendants' various breaches of their respective fiduciary duties owed to Plaintiff, the Plaintiff has suffered damages in an amount not less than $3,707,548.55, plus all applicable interest under Florida law, and all costs of collection, including attorneys' fees, incurred in this action.

231. As a direct or proximate result of the Defendants' various breaches of their respective fiduciary duties owed to Plaintiff, the Plaintiff was unable to renew its farm leases on approximately 380 acres of farmland, all of which was used to supply Company with Produce under the Agreement. Based on sales information between Plaintiff and Company, Plaintiff estimates the lost acreage produces approximately $21,543,943.00 of gross merchandise value (i.e., gross sales proceeds) each year, which equates to approximately $10,000,000.00 of lost annual revenue.

## COUNT IV

## ENFORCEMENT OF THE PACA TRUST & BREACH OF TRUST

## COMPANY & PRINCIPALS

232. Plaintiff re-alleges paragraphs 1 through 20 and 29 through 138, and 181 through 231 as though fully set forth herein.

233. As a PACA licensee, Florida licensed dealer of agricultural products, and consignment agent or grower's agent for Plaintiff, Company possessed a fiduciary duty to act in Plaintiff's best interests and with the highest standard of care, loyalty, and honesty.

234. As a PACA licensee, Florida licensed dealer of agricultural products, and consignment agent or grower's agent for Plaintiff, Company possessed a fiduciary duty to act in the best interest of Plaintiff and to handle the Produce Plaintiff consigned to Company, and all related proceeds, solely for Plaintiff's benefit and not for its own.

235.   Company's duties to Plaintiff, express or implied, under PACA are cumulative and in addition to any duties owed to Plaintiff under Florida law, applicable common law, or that arise simply due to the existence of the parties' contractual relationship.

236.   Defendants accepted those fiduciary duties owed to Plaintiff under PACA and Florida law by operating as a licensed "dealer" of Produce under PACA and Florida law, by executing the Marketing Agreement, and by accepting Produce from Plaintiff on consignment during the 2024-2025 season.

237.   Defendants, individually and collectively, served as trustees of all funds Company collected on behalf of Plaintiff.

238.   The Company and Principals were in possession, custody and control of the Produce Plaintiff placed with Company on consignment during the 2024-2025 season and all assets derived from the Defendants' subsequent sale of that Produce, including, without limitation: (i) food or products derived from Produce; (ii) accounts receivable; (iii) proceeds from the sale of Produce; (iv) cash; (v) any other assets commingled with proceeds of Produce; and (vi) any other assets acquired or maintained with such proceeds, cash, assets, or other trust assets held in the Company's name (collectively the "*PACA Trust Assets*") for the benefit of Plaintiff.

239.   As a PACA licensee, Company served as the corporate trustee of the PACA Trust Assets.

240.   As persons in a position of control over Company and/or the PACA Trust Assets, Principals each served as co-trustees of the PACA Trust Assets.

241.   As a PACA licensee and trustees of the PACA Trust Assets, Defendants possessed a duty to preserve the PACA Trust Assets and to protect the PACA Trust Assets from dissipation.

242.     Defendants failed or refused to deliver to Plaintiff sufficient funds from the PACA Trust Assets in an amount not less than $3,707,548.55 of funds Company admitted collected on behalf Plaintiff.

243.     Defendants failed to segregate and preserve the PACA Trust Assets for the benefit of Plaintiff.

244.     Defendants failed to ensure that the PACA Trust Assets were freely available to satisfy the Company's outstanding obligations to Plaintiff under PACA, Florida law, and the Agreement.

245.     Defendants failed to segregate the PACA Trust Assets and to avoid commingling trust property with personal or corporate assets in violation of PACA and Florida law.

246.     Defendants failed to protect the PACA Trust Assets and dissipating the PACA Trust Assets by refusing to disburse said trust assets to Plaintiff and by using said assets to satisfy claims against Company (i.e., for the benefit of Company and not Plaintiff) in violation of PACA and Florida law.

247.     As a direct or proximate result of the Defendants' various breaches of trust, the Plaintiff has suffered damages in an amount not less than $3,707,548.55, plus all applicable interest under Florida law, and all costs of collection, including attorneys' fees, incurred in this action.

248.     As a direct or proximate result of the Defendants' various breaches of trust, the Plaintiff was unable to renew its farm leases on approximately 380 acres of farmland, all of which was used to supply Company with Produce under the Agreement. Based on sales information between Plaintiff and Company, Plaintiff estimates the lost acreage produces approximately $21,543,943.00 of gross merchandise value (i.e., gross sales proceeds) each year, which equates to approximately $10,000,000.00 of lost annual revenue.

## COUNT V

## NEGLIGENCE

## COMPANY & PRINCIPALS

249.    Plaintiff re-alleges paragraphs 1 through 20 and 29 through 138, and 181 through 231 as though fully set forth herein.

250.    Defendants possessed a statutory duty to ensure that Company performed all duties, express or implied, arising out of Company's Produce related transactions and dealings with Plaintiff.

251.    Defendants possessed a duty to deal with Plaintiff in good faith, which requires honesty in fact and observance of reasonable commercial standards of fair dealing in the trade.

252.    Principals were each responsible for or in a position of responsibility for overseeing, managing, and directing the Company's handling and disposition of the Produce Plaintiff consigned to Company during the 2024-2025 season, including all related sales proceeds.

253.    Because Company was and is a licensed dealer or commission merchant of Produce under PACA and a licensed dealer of agricultural products under Florida law, Plaintiff possessed a reasonable expectation that Company would comply with the laws applicable to transactions involving the consignment of Produce.

254.    Defendants owed a duty to Plaintiff to comply with the law and promptly pay Plaintiff all sums due and owing to Plaintiff from Company's sale of Plaintiff's Produce.

255.    Defendants owed a duty to Plaintiff to account promptly to Plaintiff for all Produce Plaintiff placed with Company on consignment during the 2024-2025 season and all related sales proceeds.

256.     Defendants owed a duty to Plaintiff to truly, correctly, and properly account to Plaintiff for all Produce Plaintiff placed with Company on consignment during the 2024-2025 season and all related sales proceeds.

257.     Defendants owed a duty to Plaintiff to refrain from self-dealing with respect to all Produce Plaintiff placed with Company on consignment during the 2024-2025 season and all related sales proceeds.

258.     Defendants owed a duty to Plaintiff to refrain from taking unauthorized deductions from the funds Company collected with respect to the Produce Plaintiff placed with Company on consignment during the 2024-2025 season.

259.     Defendants owed a duty to Plaintiff to both obtain and maintain all records Company was required to keep (e.g., dump certificates, sales adjustment documentation, bills of lading, traceability documents, invoices, cash receipts, etc.) in connection with its sale or distribution of the Produce Plaintiff placed with Company on consignment during the 2024-2025 season.

260.     Defendants' failure to prevent the Company's from failing or refusing to promptly pay Plaintiff was unlawful, resulted in the diversion of collected funds away from Plaintiff, and constituted a breach of the Principals individual and collective fiduciary duties to Plaintiff.

261.     Defendants' failure to prevent the Company from failing or refusing to promptly account to Plaintiff was unlawful, resulted in the diversion of Produce and collected funds away from Plaintiff, and constituted a breach of the Principals individual and collective fiduciary duties to Plaintiff.

262.     Defendants' failure to prevent the Company from failing or refusing to truly, correctly, and properly account to Plaintiff was unlawful, resulted in the diversion of collected

funds away from Plaintiff, and constituted a breach of the Principals individual and collective fiduciary duties to Plaintiff.

263.    Defendants' failure to prevent the Company from taking unauthorized deductions from funds collected on behalf of Plaintiff, an example of self-dealing, was unlawful, resulted in the diversion of collected funds away from Plaintiff, and constituted a breach of the Principals individual and collective fiduciary duties to Plaintiff.

264.    Defendants' failure to prevent the Company from withholding funds due and owing to Plaintiff for the purpose of setting off expenses allegedly incurred in connection with Plaintiff's May 19, 2025 recall of certain cucumbers, an example of self-dealing, was unlawful, resulted in the diversion of collected funds away from Plaintiff, and constituted a breach of the Principals individual and collective fiduciary duties to Plaintiff.

265.    In failing to ensure the Company complied with PACA and Florida law with respect to Company's handling of Plaintiff's Produce during the 2024-2025 season, including all related sales proceeds, Defendants' breached their individual and collective duty to deal with Plaintiff in good faith and in observance of reasonable commercial standards of fair dealing in the trade.

266.    Defendants' negligent or intentional use of funds collected from Company's sale of Plaintiff's Produce during the 2024-2025 season to pay itself beyond what was authorized under the Agreement, PACA, and Florida law and to setoff unapproved expenses allegedly incurred in connection with Plaintiff's May 19, 2025 recall of certain cucumbers in circumvention of the reimbursement process set forth in the Agreement was both wrongful and unlawful under PACA and Florida law.

267.    Principals, and each of them, benefitted from Company's retention of the unauthorized deductions from funds Company collected on behalf of Plaintiff and its improper

setoff of alleged Food Safey Event expenses for the benefit of itself and to the detriment of Plaintiff.

268.    Based on the Defendants' conduct as alleged herein, Defendants failed to act in a manner consistent with how a reasonably careful, prudent, and cautious person would act under similar circumstances and in conformity with known and established industry best practices and standards of conduct.

269.    As a direct or proximate result of the Defendants' various breaches of their respective fiduciary duties owed to Plaintiff, the Plaintiff has suffered damages in an amount not less than $3,707,548.55, plus all applicable interest under Florida law, and all costs of collection, including attorneys' fees, incurred in this action.

270.    As a direct or proximate result of the Company's violations of its duties to Plaintiff under PACA, the Plaintiff was unable to renew 6 separate farm leases on approximately 380 acres of farmland, all of which was used to supply Company with Produce under the Agreement. Based on sales information between Plaintiff and Company during the term of the Agreement, Plaintiff estimates lost sales review of approximately $10,300,000.00 per year from Plaintiff's inability to grow Produce on the 380 acres of farmland for which it could not renew its land leases. Plaintiff's loss of about $10,300,000.00 of annual sales revenue resulted in a corresponding loss of approximately $2,500,000.00 of profit per year.

271.    But for Defendants' violations of its duties to Plaintiff under PACA, Florida law, and the Agreement, Plaintiff: (i) would not need to litigate its claims for the return of not less than $3,707,548.55, which Company admitted collected on behalf of Plaintiff; (ii) have been able to renew or otherwise continue its farm leases on approximately 380 acres of farmland, (iii) would not have lost the approximately $2,500,000.00 of annual profits associated with its loss of

approximately $10,300,000.00 of gross merchandise value related to the 380 acres of lost farmland leases, (iv) would not need to incur the cost of litigating the above styled civil action, and (iv) would be able to work through the alleged "Food Safety Event"[13] and provide reimbursements as Plaintiff deems appropriate and without Company wrongly replacing Plaintiff's judgment for its own by withholding funds admittedly due to Plaintiff for the improper purpose of paying alleged Food Safety Event related expenses.

**WHEREFORE**, Plaintiff respectfully seeks the entry of an Order providing as follows:

A)      As to Count I: entering a Final Judgment in favor of Plaintiff and against the Company for its violations of PACA in an amount to be proven at trial, but not less than $16,287,504.63, which is comprised of not less than $3,707,548.55 for the return of wrongfully withheld and admittedly owed funds collected on behalf of Plaintiff, $12,500,000.00 for lost profits for a period of five (5) years, plus not less than $79,956.08 of interest under Florida law (calculated on the $3,707,548.55 from July 31, 2025 through October 30, 2025 at the statutory rate of 8.65% (APR)), and all costs of collection, including attorneys' fees, incurred in this action;

B)      As to Count II, entering a Final Judgment in favor of Plaintiff and against the Company for its breach of contract, in an amount to be proven at trial, but not less than $16,287,504.63, which is comprised of not less than $3,707,548.55 for the return of wrongfully withheld and admittedly owed funds collected on behalf of Plaintiff, $12,500,000.00 for lost profits for a period of five (5) years, plus not less than $79,956.08 of interest under Florida law (calculated on the $3,707,548.55 from July 31, 2025 through October 30, 2025 at the statutory rate of 8.65% (APR)), and all costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

---

[13] The phrase "Food Safety Event" is defined in the parties' Agreement.

C)      As to Count III, Plaintiff requests: (i) that this Court impose a constructive trust on the funds Defendants collected and retained from its sale of the Produce Plaintiff placed with Company, as a consignment or grower's agent for Plaintiff and as trustees for the benefit of Plaintiff, during the 2024-2025 season, and order Defendants to account for and turn over all such funds, and (ii) entry of a Final Judgment in favor of Plaintiff and against the Company and Principals, jointly and severally, for their breach of fiduciary duties, in an amount to be proven at trial, but not less than $16,287,504.63, which is comprised of not less than $3,707,548.55 for the return of wrongfully withheld and admittedly owed funds collected on behalf of Plaintiff, $12,500,000.00 for lost profits for a period of five (5) years, plus not less than $79,956.08 of interest under Florida law (calculated on the $3,707,548.55 from July 31, 2025 through October 30, 2025 at the statutory rate of 8.65% (APR)), and all costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

D)      As to Count IV, entering a Final Judgment in favor of Plaintiff and against the Company and Principals, jointly and severally, for breach of trust in an amount to be proven at trial, but not less than $16,287,504.63, which is comprised of not less than $3,707,548.55 for the return of wrongfully withheld and admittedly owed funds collected on behalf of Plaintiff, $12,500,000.00 for lost profits for a period of five (5) years, plus not less than $79,956.08 of interest under Florida law (calculated on the $3,707,548.55 from July 31, 2025 through October 30, 2025 at the statutory rate of 8.65% (APR)), and all costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

E)      As to Count V, entering a Final Judgment in favor of Plaintiff and against the Company and Principals, jointly and severally, for negligence in an amount to be proven at trial, but not less than $16,287,504.63, which is comprised of not less than $3,707,548.55 for the return

of wrongfully withheld and admittedly owed funds collected on behalf of Plaintiff, $12,500,000.00 for lost profits for a period of five (5) years, plus not less than $79,956.08 of interest under Florida law (calculated on the $3,707,548.55 from July 31, 2025 through October 30, 2025 at the statutory rate of 8.65% (APR)), and all costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein; and

F)     Providing such other and further relief as the Court deems appropriate upon consideration of this matter.

Dated: November 3, 2025

WHITELOCK & ASSOCIATES, P.A.

By:     /s/ Christopher J. Whitelock
        Christopher J. Whitelock, Esq.

        Christopher J. Whitelock, Esq
        Florida Bar No. 67539
        WHITELOCK & ASSOCIATES, P.A.
        Whitelock Law building
        300 Southeast Thirteenth St.
        Fort Lauderdale, FL 33316
        Tel: (954)463-2001
        E-mail: cjw@whitelocklegal.com
        *Counsel for Bedner Growers, Inc.*

        Jeffrey Pheterson, Esq.
        Florida Bar No. 220469
        LIPPES MATHIS LLP
        4420 Beacon Circle
        West Palm Beach, Florida 33407
        Tel: (561) 842-3000
        E-mail: jpheterson@lippes.com
        *Counsel for Bedner Growers, Inc.*

        Jason R. Klinowski, Esq.
        Alabama Bar No. asb-3856-t61s
        (*pro hac vice* forthcoming)
        KLINOWSKI DAMIANO LLP
        P.O. Box 43404
        Birmingham, Alabama 35243
        Tel: (205) 644-8881
        E-mail: jklinowski@aglawyer.com
        *Counsel for Bedner Growers, Inc.*

## VERIFICATION

Charlie Bedner, being first duly sworn, hereby states and affirms that he has read the foregoing Verified Complaint, including all internally referenced exhibits, and knows the contents thereof and that the same are true, except as to matters therein stated on information and belief, and as to such matters he believes it to be true.

Mr. Bruce Bedner further states and affirms that he has read or reviewed all of the exhibits attached to the foregoing Verified Complaint and knows or believes each such exhibit to be a true and correct copy of the original document.

Mr. Bruce Bedner hereby further states and affirms that he is duly authorized to sign the Verified Complaint on behalf of Bedner Growers, Inc.

**I declare, under penalty of perjury, that the foregoing is true and correct as set forth in 28 U.S.C. § 1746.**

Dated: November 3, 2025              **BEDNER GROWERS, INC.**

_____
Charlie Bedner, President
*Bedner Growers, Inc.*